UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON W. MILLER,<br><br>  Plaintiff<br><br>  v.<br><br>JEREMY RUTHERFORD, *et al.*,<br><br>  Defendants. | CIVIL ACTION NO. 3:24-CV-01506<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court are two motions to dismiss the complaint in this matter and a motion for reconsideration of the Court's previous December 9, 2024 Order. (Doc. 23; Doc. 25; Doc. 40). For the following reasons, the Court will grant the two motions to dismiss the complaint and deem the motion for reconsideration withdrawn.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

This action began as three separate actions filed by Plaintiff Jason Miller ("Miller"), an inmate currently housed at the State Correctional Institution Houtzdale ("SCI-Houtzdale") , in September of 2024. (Doc. 13). All three complaints address the attempted removal of a ring upon Miller's arrival at SCI-Camp Hill.

The initial complaint names a single defendant, Physician's Assistant Jeremy Rutherford ("Rutherford"), and alleges that on May 17, 2023, he arrived at the SCI-Camp Hill and was ordered to remove a ring from the middle finger of his right hand. (Doc. 1, at 4). He states that he was unable to remove the ring due to left side paralysis, and had mentioned that he had worn the ring for over a year. (Doc. 1, at 4). He alleges that several correctional officers and medical staff attempted to remove the ring by the string method and by using a

ring cutter, but these did not work. (Doc. 1, at 4). Miller then alleges that Defendant Rutherford called the shift commander asking permission to get angled wire cutters, files, and a Dremmel 3000 power tool. (Doc. 1, at 4). Miller alleges that there was a single piece of gauze against his skin to safeguard against the Dremmel. (Doc. 1, at 4). Miller states that the Dremmel got away from Defendant Rutherford and cut and burned his finger. (Doc. 1, at 4). Miller alleges that he asked him to "please, stop!" for the three hours, approximately, he attempted to remove the ring. (Doc. 1, at 4). After Defendant Rutherford's efforts, he was provided triple antibiotic ointment and escorted back to "R" block. (Doc. 1, at 4). Miller alleges he suffered injury in the form of burns, scarring, and permanent nerve damage. (Doc. 1, at 5). Based on these alleged facts, Miller brought claims of "Enhancement of Damages," negligence, cruel and unusual punishment, and deliberate indifference. (Doc. 1, at 5). Miller seeks relief in the form of ADA damages and compensatory relief. (Doc. 1, at 5).

The first supplemental complaint, originally filed in No. 3:24-CV-01523-KM-EW, names Correction Officer Renee ("Rangi")[1] and Correction Officer Dowling ("Dowling"), both employed at SCI-Camp Hill, as defendants and raises claims under 42 U.S.C. § 1983 and the FTCA. (Doc. 12, at 1). Miller alleges that after his arrival at SCI-Camp Hill on May 17, 2023, he was directed by correctional officers to remove the ring on his right hand. (Doc. 12, at 4). He was then sent to medical for five hours "to no avail." (Doc. 12, at 4). On May 23, 2024[2], Miller was sent out to the hospital to "UPMC" in Harrisburg per order by P.A. Joscylyn Ramirez. (Doc. 12, at 4). Miller states that he was transported to UPMC

---

[1] Defendants clarify that the correct spelling of Renee is Rangi. (Doc. 24, at 1).

[2] In the other two complaints discussing the ring removal, Miller states it occurred in 2023. Therefore, the Court views this date as a scrivener's error.

accompanied by three correctional officers. (Doc. 12, at 4). He alleges that he was seated in a wheelchair and ordered to wait in adjacent hallway to a waiting room roughly ten yards from the waiting room public restroom. (Doc. 12, at 4). Miller states that Alyssa Hartraft ("Hartraft") attempted to use "Raptor scissors" to remove or cut through the ring without success. (Doc. 12, at 4). He then alleges that Defendant Rangi was handed the "Raptor scissors" by Hartraft, and "he ended up breaking off edge, or tip of scissors while [Miller] was bleeding in hospital hallway." (Doc. 12, at 4). Miller states that he asked the staff or medical personal to stop and he now as burn scarring, scar, and constant nerve pain in the right hand and fingers after several hours at UPMC on May 23, 2024. (Doc. 12, at 4). Miller states that Defendant Dowling relieved Defendant Rangi and grabbed, pulled, squeezed, and twisted at the ring while at UPMC hospital causing pain and trauma after Miller again asked, "please, stop!" (Doc. 12, at 4). Miller alleges injury in the form of nerve damages, scarring, phobias about hospitals, law enforcement, and correctional officers putting hands on or near him. (Doc. 12, at 5). Miller raises claims of negligence, "Enhancement of Damages," cruel and unusual punishment, and deliberate indifference. (Doc. 12, at 5). As relief, Miller requests ADA damages, compensatory relief, and declarative relief, stating "if D.O.C. allows those confined to purchase faith based religious articles, pendants, necklaces, rings, etc. . . regardless of which digit it was placed why the traumatic experience." (Doc. 12, at 5).

In the second supplemental complaint, originally filed under No. 3:24-CV-1526, Miller named the afore mentioned Hartraft, a physician's assistant at UPMC, as the sole defendant and raises claims pursuant to 42 U.S.C. § 1983 and the FTCA. (Doc. 14, at 1). Miller alleges that on May 23, 2023, Defendant Hartraft tried several times to remove the ring from the middle finger of his right hand using the string method. (Doc. 14, at 4). Miller states that his

finger was swollen from the first to the second knuckle. (Doc. 14, at 4). Miller alleges that he told her to "Please, stop!" (Doc. 14, at 4). Miller states that the finger was bleeding and aching from several prior attempts to remove the ring at SCI-Camp Hill. (Doc. 14, at 4). Defendant Hartraft then got the "Raptor scissors," and she still could not cut the ring. (Doc. 14, at 4). Miller states that Defendant Hartraft then handed the "Raptor scissors" to Defendant Rangi, who then broke off the end of the "Raptor scissors" under the ring so that the metal was digging into his finger. (Doc. 14, at 4). Miller alleges that staff at UPMC repeatedly tried the string method, ring cutting tools, and another pair of "Raptor scissors," which also broke off underneath the ring. (Doc. 14, at 4). Miller states that he again asked them to "Please, stop!" (Doc. 14, at 4). UPMC called the Harrisburg Fire Department who used a Dremmel tool and cut through the ring. (Doc. 14, at 4). Miller alleges an injury of scarring, nerve pain, and psychological trauma. (Doc. 14, at 5). Miller brings claims of "Enchantment of Damages," negligence, medical malpractice, and cruel and unusual punishment. (Doc. 14, at 5). Miller seeks relief in the form of ADA damages and compensatory relief. (Doc. 14, at 5).

On October 25, 2024, the Court consolidated all three cases and filed the complaints from the other two actions as supplemental complaints in the above captioned actions. (Doc. 13). The Court also screened these complaints and dismissed all claims raised under the ADA and FTCA. (Doc. 13). The Court then served a copy of the complaints to the named Defendants. (Doc. 13). On December 9, 2024, the Court denied a pending request by Miller to appoint counsel in this action. (Doc. 16). On January 10, 2025, Defendants Rangi and Dowling filed a motion to dismiss the complaint against them accompanied by a brief in support. (Doc. 23; Doc. 24). On January 21, 2025, Miller filed a motion for reconsideration of the Court's order denying his motion for appointment of counsel. (Doc. 25). This motion

4

is not supported by a brief in support. On January 27, 2025, Defendant Rutherford filed a suggestion of bankruptcy notifying the Court that Wellpath, LLC, Defendant Rutherford's employer, at filed bankruptcy, and the automatic stay entered in that bankruptcy action applied in this case. (Doc. 27). On February 3, 2025, the Court received and docketed what appears to be a response to Defendants Rangi and Dowling's motion to dismiss. (Doc. 28). On February 11, 2025, the Court entered a stay in this action pending the outcome of the automatic stay hearing in the Wellpath bankruptcy case. (Doc. 29). On May 28, 2025, Defendant Rutherford filed status report stating that the automatic stay no longer applied in the above captioned action. (Doc. 31). That same date, the Court lifted the stay in this action. (Doc. 32). On July 8, 2025, Defendant Rutherford filed a motion to dismiss the complaint filed against him along with a brief in support. (Doc. 40; Doc. 41). Miller has not filed a responsive briefing within the time set forth in Local Rule 7.6. The Court will now address the pending motions to dismiss and the motion for reconsideration in turn.

**II.    MOTION TO DISMISS STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well

as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for

which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**III.    DISCUSSION**

    A.  DEFENDANTS RANGI AND DOWLING'S MOTION TO DISMISS

In the first supplemental complaint, Miller raises an Eighth Amendment claim and a negligence claim associated with the involvement of Defendants Rangi and Dowling in the ring removal. (Doc. 12). Defendants Rangi and Dowling are seeking dismissal of the complaint filed against them by asserting that they are released of any liability because Miller was under the care and supervision of medical staff and he suffered no more than a *de minis* physical injury. (Doc. 24).

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle*, 429 U.S. at 104-05. To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

However, the Third Circuit is found that generally "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison

8

official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236.

Miller alleges that Officer Rangi was handed the Raptor scissors by Defendant Hartraft and "he ended up breaking off edge or tip of scissors while I was bleeding in hospital hallway." (Doc. 12, at 4). Miller states that he "asked the staff or medical personnel to please stop." (Doc. 12, at 4). Therefore, it is implied that Defendant Rangi was involved in attempting to remove the ring with the scissors at the instructions of Defendant Hartraft, a medical professional. Miller also makes the following statement:

> I have burn scarring, scar, and constant nerve pain now in right hand and fingers after the several hours at UPMC on 5/23/24. CO Dowling relieve CO Renee and other (2) officers at roughly 14:30 hours. Upon being treated by UPMC personal He assisted and grabbed, pulled, squeezed, and twisted at wring while at UPMC hospital causing pain and trauma after I again asked "please, stop!"

(Doc. 12, at 4). Based on the alleged facts, Defendants Rangi and Dowling were involved in the removal of the ring under the direction of a medical professional, Defendant Hartraft. While Miller alleges that he requested that Defendants stop in their actions to remove the ring, he does not allege any facts that support a finding that Defendants Rangi and Dowling had a reason to believe or actual knowledge that then steps they or the medical professionals took amounted to mistreatment or lack of treatment as required to attach liability to non-medical providers under *Spruill*. As set forth at length below, a disagreement with treatment is not akin to indifference under the Eighth Amendment. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). Therefore, Miller's requests to stop do not rise to the level of alleging

mistreatment or lack of treatment. The Court will dismiss the Eighth Amendment deliberate indifference claim without prejudice.[3]

In their brief in support, Defendants Rangi and Dowling admit that their involvement in removing the ring under the direction of a medical professional may constitute negligence. (Doc. 24, at 6). Negligence, without anything more, does not rise to the level of an Eighth Amendment violation. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Furthermore, any negligence claim against Defendants Rangi and Dowling in their official capacities under state law would be precluded by sovereign immunity.

Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978). In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc. v. Secretary U.S. Dept. Health and Human Services*, 730 F.3d 291, 318 (3d Cir. 2013). Because Defendants Rangi and Dowling are state officials, in his official capacity as an employee of the Department of Corrections, the claims against him in his official capacity for damages are really claims against the Commonwealth and, as such, are barred by the Eleventh Amendment.

A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate states' Eleventh Amendment immunity when it unequivocally

---

[3] Because the Court finds that there is no liability under Defendants Rangi and Dowling's first argument, it will not address the second argument that they did not cause a less-than significant-but-more-than-*de minimis* physical injury to Miller. (Doc. 24, at 7-10).

intends to do so and it acts pursuant to a valid grant of constitutional authority. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity, *see* 42 P.C.S.A.§ 8521(b), and 42 U.S.C. § 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979).

Although the Commonwealth of Pennsylvania has expressly reaffirmed its immunity from this type of suit in federal court, the state has waived sovereign immunity in nine limited circumstances. These exceptions to the general grant of immunity to the Commonwealth and its employees are for negligent acts involving: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. § 8522(b). The exceptions to the Commonwealth's sovereign immunity must be strictly construed because the legislature waived immunity only in specific situations. *Moser v. Heistand*, 681 A.2d 1322, 1326 (Pa. 1996) (citing *Snyder v. Harmon*, 562 A.2d 307 (1989)). "[N]on-medical [DOC] employees do not fall within the scope of Pennsylvania's 'medical-professional liability exception.'" *Steinberg v. Department of Public Welfare*, 405 A.2d 1135 (Pa. Cmwlth. 1979); *Jackson v. Beard*, 2010 WL 887246 (W.D. Pa. 2010); *Johnson v. Department of Corrections*, 1992 WL 392601 (E.D. Pa. 1992). *See also* 1 Pa. C.S. § 2310; 42 Pa. C.S. § 8522(b). Accordingly, the Eleventh Amendment bars Miller from asserting a negligence claim against Defendants Rangi and Dowling. Miller's negligence

claim against Defendants Rangi and Dowling in their official capacity should therefore be dismissed with prejudice.[4]

      B.   DEFENDANT RUTHERFORD'S MOTION TO DISMISS

Turning to the original complaint, it only addresses claims against Defendant Rutherford and those sole surviving claims include an Eighth Amendment deliberate indifference claim and a negligence claim. (Doc. 1).

As set forth above, a claim under the Eighth Amendment for inadequate medical treatment, requires a plaintiff to make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson*, 850 F.3d at 534. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates*, 834 F.2d at 346-47 (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

The Complaint states the following regarding Defendant Rutherford's involvement in the ring removal:

> Mr. Rutherford called Shift Commander asking permission to gather tools angled wore cutters, files, and after he was allowed a Dremmel 300 power tool, a single piece of gauze against my skin only to safeguard against the Dremmel. The Dremmel got away from him cutting and burning my finger. I asked him

---

[4] Defendants Rangi and Dowling do not bifurcate the status of claims brought against them in their official or individual capacities in their briefing. (Doc. 24). the Third Circuit requires a nonspecific complaint such as this to be liberally construed as if the claims were brought against Defendants in their individual capacities. *Gregory v. Chehi,* 843 F.2d 111, 119-20 (3rd Cir. 1988) ("[R]esolving doubts in favor of plaintiff, we will assume he is suing the individuals in their personal capacities as well."). Therefore, the Court finds that the negligence claim against Defendants in their individual capacity survives the current Rule 12(b)(6) challenge.

>to "please stop!" for about 3 hours approximately he attempted to remove my ring. After his efforts I was provided triple antibiotic ointment and escorted back to "R" block.

(Doc.1, at 4).

Defendant Rutherford insists that the facts alleged in Miller's original complaint merely represent a disagreement with the medical treatment Miller received. (Doc. 41, at 8-9). "Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979)). Mere disagreement over proper treatment does not state a claim upon which relief can be granted. *White*, 897 F.2d at 110; *Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

In reading the three complaints in unison, the progression of the timeline becomes apparent. First, staff at SCI-Camp Hill attempted to remove the ring. (Doc. 12, at 4; Doc. 1, at 4). Then, Miller was transported to the medical unit at SCI-Camp Hill, where Defendant Rutherford attempted removal with the use of the Dremmel. (Doc. 1, at 4). Then, Miller was transported to UPMC where Defendants Rangi and Hartraft attempted to remove the ring. (Doc. 12, at 4; Doc. 14, at 4). Finally, the local fire department was able to remove the ring with the use of the Dremmel. (Doc. 14, at 4).

Miller was transferred to the medical unit at SCI-Camp Hill for the purpose of the ring removal. Defendant Rutherford was tasked with that treatment goal. He provided care through the use of the Dremmel, and when Miller complained about burning in his finger, Defendant Rutherford provided treatment in the form of ointment. Ultimately, the Dremmel tool was sufficient to remove the ring when used by the local fire department. Therefore, the complaint fails to allege that Defendant Rutherford was deliberately indifferent, but instead it speaks to a disagreement as to the proper course of treatment. As such, it does not constitute an Eighth Amendment claim, and the claim will be dismissed without prejudice.

Miller further alleges that Defendant Rutherford was negligent in his treatment. (Doc. 1, at 5). Any liability for negligence would only be actionable under state tort law. In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)). The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora*, 209 A.3d 307, 315 (Pa. 2019) (citations omitted). To establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)).

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging professional negligence to file a certificate of merit within 60 days of filing the complaint. Pa. R. Civ. P.

14

1042.3 The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell outside acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiffs claim to proceed. Pa. R. Civ. P. 1042.3(a)(1)-(3). Failure to file a certificate of merit is fatal to a plaintiff's claim. Pa. R. Civ. P. 1042.7. The requirements of Pa. R. Civ. P. 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. See *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007).[5]

Miller filed his complaints in September of 2024. The required 60 days has long passed, and no certificate of merit has been received by the Court. Therefore, the negligence claim will be dismissed without prejudice.

### C. Miller's Motion for Reconsideration

Currently pending is Miller's motion for reconsideration of the Court's order denying appointment of counsel. (Doc. 25). Miller has not filed a brief in support of his motion. Local Rule 7.5 states, in pertinent part, that "[w]ithin fourteen (14) days after the filing of any

---

[5] The Third Circuit has held that Rule 1042.3's certificate of merit requirement does not apply in FTCA cases. *Wilson v. United States*, 79 F.4th 312, 316 (3d Cir. 2023). Miller's FTCA claims were dismissed with prejudice previously by the Court. (Doc. 11; Doc. 13).

motion, the party filing the motion shall file a brief in support of the motion. . . If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn." Without a brief in support of the motion, the Court has insufficient information to determine whether it is appropriate to grant or deny the motion at this time. Therefore, the Court will deem the motion withdrawn.

        D.   DEFENDANT HARTRAFT

While the Court attempted to serve Defendant Hartraft through the United States Marshals Service (Doc. 17), Defendant Hartraft could not be properly identified to complete service (Doc. 20, at 3). The Court ordered Miller to correctly identify Defendant Hartraft by February 3, 2025 or face the dismissal of her as a party to the litigation. (Doc. 21). Miller did not provide the required information by this deadline.

However, the Court notes that the suggestion of bankruptcy filed on January 27, 2025 may have caused some confusion on the deadlines set forth by the Court, even if the stay was not officially entered until February 11, 2025. (Doc. 27; Doc. 29). Seeing as the February 3, 2025 deadline fell between the notice of the automatic stay in the action and the Court memorializing this stay in an order, the Court will grant Miller an additional period in which to currently identify Defendant Hartraft so as to allow for proper service.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss and deem Miller's motion for reconsideration as withdrawn. The surviving claims in this action include a claim of negligence against Defendants Rangi and Dowling in their individual capacities and claims of deliberate indifference and medical malpractice against Defendant Hartraft, who has not yet been properly served. The Court will grant Miller an additional thirty-day period in which to provide the Court the required identifying information to

completed service on Defendant Hartraft. Miller will also be granted leave to amend his complaint as required under *Grayson*.

An appropriate Order follows.

Dated: August 25, 2025                                         *s/ Karoline Mehalchick*
                                                               **KAROLINE MEHALCHICK**
                                                               **United States District Judge**