**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JASON W. MILLER, | |
| Plaintiff | CIVIL ACTION NO. 3:24-CV-01506 |
| v. | (MEHALCHICK, J.) |
| JEREMY RUTHERFORD, *et al.*, | |
| Defendants. | |

**MEMORANDUM**

Before the Court are a motion for appointment of counsel and two motions for leave to file an amended complaint filed by Plaintiff Jason W. Miller ("Miller") (Doc. 51; Doc. 53; Doc. 61). The Court will deny the motion to appoint counsel, grant the first motion to amend the complaint, have the proposed amended complaint filed as the operative complaint in this matter, screen the amended complaint, and dismiss the amended complaint. The Court will deny the second motion to amend the complaint because he did not attach a proposed amended pleading pursuant to Local Rule 15.1. Miller will be granted one final opportunity to raise his claims by filing a second amended complaint.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

This action began as three separate actions filed by Miller, an inmate currently housed at the State Correctional Institution Houtzdale ("SCI-Houtzdale"), in September of 2024. (Doc. 13). All three complaints addressed the attempted removal of a ring upon Miller's arrival at SCI-Camp Hill.

The initial complaint in this matter named a single defendant, Jeremy Rutherford ("Rutherford"), a physician's assistant at SCI-Camp Hill, and concerns attempts at removing

a ring from Miller's right hand after his arrival at SCI-Camp Hill on May 17, 2023. (Doc. 1) The first supplemental complaint, originally filed in No. 3:24-CV-01523-KM-EW, named Correction Officer Renee ("Rangi")[1] and Correction Officer Dowling ("Dowling"), both employed at SCI-Camp Hill, as defendants and raised claims under 42 U.S.C. § 1983 and the Federal Tort Claims Act ("FTCA") based on the attempted removal of the ring upon Miller's arrival at SCI-Camp Hill. (Doc. 12). The second supplemental complaint, originally filed under No. 3:24-CV-1526, named Allysa Hartraft, a physician's assistant at UPMC Hospital in Harrisburg, as the sole defendant and raised claims pursuant to 42 U.S.C. § 1983 and the FTCA based on her attempts to remove the after Miller was transported from SCI-Camp Hill to the hospital. (Doc. 14).

On October 25, 2024, the Court consolidated all three cases and filed the complaints from the other two actions as supplemental complaints in the above captioned actions. (Doc. 13). The Court also screened these complaints and dismissed all claims raised under the ADA and FTCA. (Doc. 13). The Court then served a copy of the complaints to the named Defendants. (Doc. 13). On December 9, 2024, the Court denied a pending request by Miller to appoint counsel in this action. (Doc. 16). On January 10, 2025, Defendants Rangi and Dowling filed a motion to dismiss the complaint against them accompanied by a brief in support. (Doc. 23; Doc. 24).

On January 27, 2025, Defendant Rutherford filed a suggestion of bankruptcy notifying the Court that Wellpath, LLC, Defendant Rutherford's employer, had filed bankruptcy, and

---

[1] Defendants clarified that the correct spelling of Renee is Rangi. (Doc. 24, at 1).

the automatic stay entered in that bankruptcy action applied in this case. (Doc. 27). On February 3, 2025, the Court received and docketed what appeared to be a response to Defendants Rangi and Dowling's motion to dismiss. (Doc. 28). On February 11, 2025, the Court entered a stay in this action pending the outcome of the automatic stay hearing in the Wellpath bankruptcy case. (Doc. 29). On May 28, 2025, Defendant Rutherford filed status report stating that the automatic stay no longer applied in the above captioned action. (Doc. 31). That same date, the Court lifted the stay in this action. (Doc. 32). On July 8, 2025, Defendant Rutherford filed a motion to dismiss the complaint along with a brief in support. (Doc. 40; Doc. 41). Miller did not file a responsive briefing within the time set forth in Local Rule 7.6.

On August 20, 2025, the Court addressed the pending motions to dismiss. (Doc. 45; Doc. 46). The Court granted Rangi and Dowling's motion dismissing all Eighth Amendment and negligence claims. (Doc. 46). The Court granted Defendant Rutherford's motion and dismissed all claims against him without prejudice. (Doc. 46). The Court then granted Miller thirty days to notify the Court of Defendant Hartraft's correct name and address and to file an amended complaint. (Doc. 46).

Following an extension of time, the Court received and docketed Miller's motion to amend his complaint with a proposed amended complaint on September 29, 2025. (Doc. 51; Doc. 51-1). This proposed amended complaint does not correct the name or address of Defendant Hartraft. (Doc. 13; Doc. 53-1). In addition to Defendant Hartraft, Miller names Rangi, Dowling, Rutherford and the Pennsylvania Department of Corrections ("DOC") as Defendants in the action. (Doc. 53-1, at 1, 3). Miller provides the following sparce statement of facts:

3

> After Defendant Rutherford attempted to remove ring from Plaintiff Millers' right hand for (5) five hours on 05/17/2024. Plaintiff was transported to U.P.M.C. Harrisburg on 05/23/2024 where defendant Hartraft also attempted to remove ring from right hand of Plaintiff Miller. After utilizing "Raptor Scissors" in public hallway at hospital defendant Hartraft handed "Raptor Scissors" [illegible] device to Defendant Rangi who then broke off tip of raptor scissors under plaintiff['] ring band further harming, injuring Plaintiff. Plaintiff Miller alleges he was handcuffed and in wheelchair outside of examination room, in public hallway. He repeatedly said "Please stop!"

(Doc. 53-1, at 3). Elsewhere in the amended complaint, Miller states that he has no record of misconducts on file, he is a current custody level 2, and has never acted out defiantly, disruptively or obscenely to consider him by prison officials as being a safety or security risk. (Doc. 53-1, at 2). He states that after being notified and ordered to remove the religious ring from his right hand, he exhausted the grievance procedures within the DOC, but the ring was identified as unauthorized or prohibited. (Doc. 53-1, at 2).

Based on these alleged facts, Miller brings First Amendment retaliation claims, Eighth Amendment deliberate indifference, excessive force claims, and "Enhancement of Damages" claim, Fourteenth Amendment claims, Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims, and "ADAAA" claims under 42 U.S.C. § 12102, which the Court construes as American with Disabilities Act ("ADA") claims. (Doc. 53-1, at 2).

The Court will grant the pending motion to amend the complaint and direct the Clerk of Court to file the proposed amended complaint as a separate document on the docket. Now, the court will screen the amended complaint pursuant to 28 U.S.C. § 1915A.

## II.    STANDARD

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed.

App'x 195, 197 (3d Cir. 2007) (not precedential). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In this case, because Miller is a prisoner suing a governmental employee and brings his suit *in forma pauperis*, both provisions apply. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and

5

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Iqbal*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III. DISCUSSION

### A. ALL ADA CLAIMS WILL BE DISMISSED.

The Court has construed Miller's reference to the "ADAAA" as an attempt to raise an ADA claim.

"To state a claim under either the ADA or the RA, [a plaintiff] must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F3.d 285, 288–89 (3d Cir. 2019). Miller's amended complaint is devoid of any alleged disability. Therefore, his claim under the ADA will be dismissed without prejudice.

### B. ALL RLUIPA CLAIMS WILL BE DISMISSED.

The RLUIPA "protects institutionalized persons who are unable to freely attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion". *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). In relevant part, RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
>
> (1)     is in furtherance of a compelling governmental interest; and
>
> (2)     is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

To establish a *prima facie* case under RLUIPA, an inmate must demonstrate that: (1) he engaged in a religious exercise; and (2) the religious exercise was substantially burdened. RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief 42 U.S.C. § 2000cc–5(7)(A). The Third Circuit has defined "substantial burden" as follows:

> For the purposes of RLUIPA, a "substantial burden" exists where: (1) a follower is forced to choose between following the precepts of his religion and

> forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington v. Klem,* 497 F.3d 272, 280 (3d Cir. 2007) (emphasis in original). A "substantial burden" includes a rule or regulation which compels the prisoner to engage in "conduct that seriously violates [his] religious beliefs." *Holt v. Hobbs,* 574 U.S. 352, 352-53 (2015) (quoting *Burwell v. Hobby Lobby,* 573 U.S. 682, 717 n.28 (2014). "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt,* 135 S.Ct. at 862.

Here, Miller simply makes a reference to the ring being associated with religious beliefs: "After being notified, ordered to remove religious ring from right hand." (Doc. 53-1, at 2). Miller also references that other inmates are permitted to wear jewelry that identify them as a member of a specific religion or belief system. (Doc. 53-1, at 2). Miller's amended complaint does not allege the religious significance of the ring with any specificity so as to establish the substantial burden requirement set forth in *Washington*. Specifically, there is nothing to suggest that the removal of the ring is equivalent to abandoning one of the precepts of his religion. Therefore, the claim will be dismissed without prejudice.

Miller makes reference to a First Amendment claim in his complaint. (Doc. 53-1, at 2). To the extent that he is attempting to raise a First Amendment freedom of religion claim, the allegations in the amended complaint also fall short. Two threshold requirements must be met before particular beliefs, alleged to be religious in nature, are accorded First Amendment protection. *Africa v. Pennsylvania*, 662 F.2d 1025, 1029-30 (3d Cir. 1981). The beliefs avowed must be (1) sincerely held, and (2) religious in nature. *Africa*, 662 F.2d at 1029-30. Again,

Miller made no allegation in his amended complaint that the ring is associated with a sincerely held religious belief. Instead, he merely referred to the item as a "religious ring." Therefore, these sparce allegations do not trigger First Amendment protections.

### C. ALL SECTION 1983 CLAIMS AGAINST THE DOC WILL BE DISMISSED.

Miller attempts to bring claims against the DOC for the first time in this amended complaint. (Doc. 53-1).

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

Here, Miller names the DOC as a defendant. (Doc. 53-1). It is well-settled that neither a state nor its agencies, are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a § 1983 suit. *Hafer v. Melo*, 502 U.S. 21, 25–27 (1997). Therefore, the DOC is not a "person" within the meaning of 42 U.S.C. § 1983, and all claims raised against it will be dismissed with prejudice.

### D. ALL CLAIMS AGAINST DEFENDANT DOWLING WILL BE DISMISSED

In the amended complaint, Miller again names Defendant Dowling as a party to the action but he does not allege any personal actions or involvement by Defendant Dowling within the alleged statement of facts. (Doc. 53-1).

As set forth above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka*, 481 F.3d at 210. Without allegations of personal involvement, all claims against Defendant Dowling will be dismissed without prejudice.

E.  ALL CLAIMS AGAINST DEFENDANT HARTRAFT WILL BE DISMISSED.

All remaining claims against Defendant Hartraft are constitutional claims under 42 U.S.C. § 1983. (Doc. 53-1). As set forth above, to bring a claim under Section 1983, Miller must allege the following: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West*, 487 U.S. at 48; *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." (citation omitted)).

Here, Defendant Hartraft is a Physician's Assistant at UPMC Harrisburg Hospital, not a medical provider at a DOC facility. (Doc. 53-1, at 1). "Whether or not outside medical providers, to whom prison officials refer inmates for medical treatment that the prison cannot itself provide, can be deemed to be state actors generally turns on whether those providers do so pursuant to a contract with the state." *Collazo v. Rosenthal*, No. 23-3475, 2023 WL 8720136, at *3 (E.D. Pa. Dec. 18, 2023) (citing, *inter alia, Illescas v. Annucci*, No. 21-8473, 2022 WL 17539696, at *4 (S.D.N.Y. Dec. 7, 2022) (collecting cases and distinguishing between defendants that treat prisoner plaintiffs at private hospitals where there is no allegation that the treatment is "provided pursuant to a contract between the government and the private

11

hospital" and non-public medical providers that provide inmates with medical treatment outside of a prison pursuant to a contract, and holding that the latter may be state actors)). In the amended complaint, Miller only alleges that Defendant Hartraft is employed at UPMC Harrisburg. Miller has not alleged that any contract exists between the DOC and UPMC Harrisburg to establish that Defendant Hartraft is acting under the color of state law. Therefore, all claims against Defendant Hartraft will be dismissed without prejudice.

F.   ALL FIRST AMENDMENT RETALIATION CLAIMS WILL BE DISMISSED.

Miller attempts to bring a First Amendment retaliation claim against all Defendants. (Doc. 53-1, at 2).

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015). A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191. Miller makes no allegations that he was involved in constitutional protected conduct at the time of the ring's removal. (Doc. 53-1). Therefore, the Court will dismiss the First Amendment retaliation claims without prejudice.

G.  ALL EIGHTH AMENDMENT CLAIMS WILL BE DISMISSED.

In the amended complaint, Miller alleges Eighth Amendment claims under the theories of deliberate indifference, excessive force, and "Enhanced Damages." (Doc. 53-1, at 3).

### 1.  Deliberate Indifference

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle*, 429 U.S. at 104-05. To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

However, the Third Circuit is found that generally "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236.

Miller alleges that Defendant Rangi was handed the Raptor scissors by Defendant Hartraft and he broke off the tip of the scissors under Miller's ring. (Doc. 53-1, at 3). Therefore, Defendant Rangi was involved in the removal of the ring under the direction of a medical professional, Defendant Hartraft. While Miller alleges that he requested that Defendants stop, he does not allege that the Defendants continued to attempt to remove the ring following his requests to stop. (Doc. 53-1, at 3). As set forth at length below, a disagreement with treatment is not akin to indifference under the Eighth Amendment. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). Therefore, Miller's requests to stop do not rise to the level of alleging mistreatment or lack of treatment. The Court will dismiss the Eighth Amendment deliberate indifference claim against Defendant Rangi.

Turning to the deliberate indifference claims raised against Defendant Rutherford, the Court finds, as it did in August of 2025, that the alleged facts only demonstrate that the treatment amounted to a disagreement and not deliberate indifference. "Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at \*4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979)). Mere disagreement over proper treatment does not state a claim upon which relief can be granted. *White*, 897 F.2d at 110; *Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere

14

disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

The alleged minimal facts demonstrate that Miller disagrees with the attempts to remove the ring. (Doc. 53-1, at 3). He also alleges that he asked the Defendants to stop, but he does not allege that the Defendants continued with the attempted removal of the ring after his requests to stop. (Doc. 53-1, at 3). In fact, Miller's prior statement of facts was much more detailed than the current statement of facts. Therefore, his amended complaint fails to cure the pleading defects that were set forth in the Court's August of 2025 memorandum and order and the claims will be dismissed without prejudice. (Doc. 45; Doc. 46).

### 2. Use of Excessive Force

Miller alleges that Defendants Rangi and Rutherford used excessive force in the removal of the ring. (Doc. 53-1, at 2).

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases ... where the deliberate use of force is challenged as excessive and unjustified." *See Whitley v. Albers*, 475 U.S. 312, 327 (1986). The question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7, (1992) (citing *Whitley*, 475 U.S. 312).

Again, Miller's alleged facts in this amended complaint are significantly less than the alleged facts in his prior complaints. There are no allegations in the amended complaint that the force used was applied in a malicious or sadistic manner to cause harm. (Doc. 53-1). There are no allegations that Defendants continued to make attempts to remove the ring after Miller

asked them to stop. (Doc. 53-1). Therefore, the Court will dismiss the excessive use of force claim without prejudice.

### H. THERE IS NO EIGHTH AMENDMENT CLAIM TO JUSTIFY ENHANCEMENT OF DAMAGES.

Miller alleges that he is seeking enchantment of damages under the Eighth Amendment. (Doc. 53-1, at 2). As set forth above, no Eighth Amendment claims have survived screening under Section 1915A. Therefore, there will be no enhancement of damages associated with these claims.

### I. MILLER WILL BE GRANTED LEAVE TO FURTHER AMEND THE COMPLAINT.

As set forth above, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson*, 293 F.3d at 108. This is Miller's fourth complaint in this matter. The first three complaints were filed in different cases and consolidated under the above captioned case number. (Doc. 13). The Court previously dismissed these three complaints for failing to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6), and granted Miller leave to cure the pleading defects in the original three complaints. (Doc. 46). This amended complaint failed to cure the pleading defects previously set forth by the Court as demonstrated by a truncated statement of facts when compared to the facts alleged in the original three complaints. (Doc. 53-1). On May 18, 2026, the Court received a second motion to amend his complaint (Doc. 61). This moton will be denied because Miller did not attach the proposed amended pleading as required under Local Rule 15.1. Since the Court will grant Miller the opportunity to file a second amended complaint, he is not required to file a motion to amend. He may simply file an amended

16

complaint titled "Second Amended Complaint" and raising all the claims against all Defendants.

### J. THE MOTION FOR APPOINTMENT OF COUNSEL WILL BE DENIED.

Since there is no current operative complaint in this matter, the Court will deny the motion for appointment of counsel. Representation by counsel may be appropriate under certain circumstances after a finding that the plaintiff's case has arguable merit in fact and law. *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Since the court finds that this amended complaint has no arguable merit in fact, the Court will deny the motion for appointment of counsel without prejudice.

## IV. CONCLUSION

For the above stated reasons, the Court will grant Miller's first motion for leave to file an amended complaint and file the proposed amended pleading as on the docket. The Court will dismiss this amended complaint for failing to state a claim for which relief may be granted under 28 U.S.C. § 1915A. Miller's motion for appointment of counsel will be denied without prejudice. The second motion for leave to file an amended complaint will be denied because he did not attach a proposed amended pleading in accord with Local Rule 15.1. The Court will grant Miller leave to file a second amended complaint. He is not required to seek leave of the Court to file the second amended complaint so long as it is timely filed.

An appropriate order follows.

**Dated: May 18, 2026**                    *s/ Karoline Mehalchick*
                                           **KAROLINE MEHALCHICK**
                                           **United States District Judge**